UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:18-CR-00191-D-1

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM IN SUPPORT OF |
| | ) | DEFENDANT'S PRO SE MOTION |
| JERMILL BLACKNALL, | ) | FOR COMPASSIONATE RELEASE |
| | ) | |
| Defendant. | ) | |

Mr. Jermill Blacknall, through undersigned counsel, respectfully moves this Honorable Court to grant his Motion for Compassionate Release under 18 U.S.C. § 3582(c)(1)(A) based on the "extraordinary and compelling reasons" presented by his immediate vulnerability to death or serious complications from COVID-19 due to his obesity, and ongoing serious respiratory complications, which were initially incurred from a gun-shot wound to his upper left chest wall in 2016. *See* **Exhibit A** (Medical Records) at 16 (BMI of 33.8, falling within obesity range as defined by the CDC); *see also* **Exhibit A** at 24,37 (indicating ongoing breathing difficulties from gun-shot round to upset left chest wall in 2016). As verified herein and also attached to said Motion for Compassionate Release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Mr. Blacknall has properly exhausted his administrative remedies by filing his release request with the warden which was denied on August 19, 2020. *See* **Exhibit B** Verification of Exhaustion of Administrative Remedies: Rejection Notice.

Mr. Blacknall is thirty-three (33) years old and suffers from obesity and dreadful breathing difficulties from a gun-shot wound which resulted in

1

hospitalization in 2016. *See* **Exhibit A** at 16, 24, 37. Both Mr. Blacknall's obesity and grave respiratory problems place him at much higher risk for developing severe illness if he were to contract COVID-19. According to the Institute for Respiratory Health, "by far and away, the most common illnesses linked to the development of serious disease in COVID-19 patients across [Great Britain, China, and the USA] have been diabetes, high blood pressure, and *obesity*. *See COVID-19 and People with Pre-Existing Lung Conditions*: (https://www.resphealth.org.au/coronavirus/covid-19-and-people-with-pre-existing-lung-conditions/) (last accessed March 16, 2021) (emphasis added). This is of particular importance given that Mr. Blacknall is obese. Moreover, concerning Mr. Blacknall's dire respiratory difficulties, a study published in February of this year by the Respiratory Research journal found that "[i]n fully adjusted models, patients with preexisting respiratory diseases had significantly higher mortality… higher race of ICU admission… and increased need for mechanical ventilation." *See Pre-Existing Respiratory Diseases and Clinical Outcomes in COVID-19: a multihospital cohort study on predominantly African American Population* (last accessed March 16, 2021) (https://respiratory-research.biomedcentral.com/articles/10.1186/s12931-021-01647-6*)*. While Mr. Blacknall does not suffer from a respiratory illness per se, his "respiratory difficulties" from a gunshot wound near his lungs are not dissimilar to those of many respiratory ailments, and thus, should be considered akin to them.

Mr. Blacknall is in custody at FCI Butner II, one of four prison facilities on the Federal Correctional Complex at Butner (FCC Butner). FCC Butner is infamous for

being the deadliest BOP prison in the country throughout the COVID-19 pandemic. *See Coronavirus NC: How FCI Butner Became the Deadliest BOP Facility During COVID-19,* https://www.newsobserver.com/news/coronavirus/article244131227.html#:~:text=Nowhere%20in%20the%20federal%20system,most%20of%20any%20federal%20lockup (last accessed March 19, 2021). As of this writing, thirty (30) inmates have died of COVID-19 while in custody at the FCC Butner complex; the second deadliest facility in the country, Springfield MCFP, has had a little more than half that number at eighteen (18) fatalities. *See* https://www.bop.gov/coronavirus/ (last accessed March 19, 2021). At Mr. Blacknall's location, there are 1,415 total inmates, 440 of whom has tested positive for COVID, and 3 of whom have died. *See* https://www.bop.gov/coronavirus/ (last accessed March 19, 2021). These horribly dangerous conditions prompted multiple lawsuits in 2020, and ultimately a memorandum from attorney general William Barr on April 3, 2020 stating

> Inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which covid-19 is materially affecting their operations… I therefore authorize the BOP to transfer to home confinement even if electronic monitoring is not available, so long as the BOP determines in every such instance that doing so is consistent and appropriate with our obligation to protect public safety.

*See* **Exhibit C** Memorandum from Attorney General Barr, at 2; *see also Prison Legal News: North Carolina Prisoners at Deadliest Federal Prison File Suit on COVID-19 Response*, at 2 https://www.prisonlegalnews.org/news/2021/jan/1/north-carolina-prisoners-deadliest-federal-prison-file-suit-covid-19-response/ (indicating ongoing

lawsuits from the ACLU and Winston and Strawn, LLP) (last accessed March 19, 2021). The mortality rate at FCC Butner is deeply concerning and, as indicated above, Mr. Blacknall already possesses two of the deadliest co-morbidities for COVID-19 (obesity and respiratory difficulty). If Mr. Blacknall contracts COVID-19, the coronavirus will likely significantly impact his life by attacking, *inter alia*, his central nervous system, respiratory system, or even cause his death. This type of punishment which consists of him having to be detained during these times does not fit the crime anymore; in other words, it is most certainly greater than necessary. 18 USC § 3553(a).

Additionally, it is important to identify that a Southern District of Mississippi court granted a motion for compassionate release to an inmate healthier than Mr. Harper when faced with prison conditions far better than those at FCC Butner. At the time the opinion was written, seven (7) inmates had died, and only thirty-three (33) inmates, or slightly less than 4% of the inmate population, had tested positive for COVID-19. *See United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at 10-11 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence."). Thus, further establishing the appropriateness of Mr. Blacknall's

Compassionate Release Motion especially when taking into consideration all of the other compelling factors in the case sub judice as well.

According to a National Commission on COVID-19 and Criminal Justice report released in September of 2020 on the impact of COVID-19 in U.S. State and Federal Prisons, the COVID-19 mortality rate within prisons is twice as high as the general population's morality rate and the rate of COVID-19 infections is over four times as high as the general population. *See Schnepel, Kevin T*. COVID-19 in U.S. State and Federal Prisons. Washington, D.C.: Council on Criminal Justice (September 2020). To then consider these facts alongside the fact that FCC Butner is the deadliest federal prison in the country, and the situation at FCC Butner is exceedingly alarming. Therefore, considering all factors in this case, Mr. Blacknall is at a much higher risk than the general population of COVID-19 complications or mortality, presenting extraordinary and compelling reasons for compassionate release.

As most judges from the Eastern District of North Carolina have granted such Compassionate Release Requests where it is appropriate to show this type of legally-sanctioned mercy, it is respectfully requested that this Honorable Court also issue an order reducing Mr. Blacknall's sentence to time served and/or home confinement given that it is appropriate to do so in Mr. Blacknall's case. See for example, *United States v. Roberto Pablo Gutierrez*, Crim. No. 5:11-CR-149-1-BR, ECF No. 156 (E.D.N.C. April 30, 2020). Moroever, as mentioned, former Attorney General Barr encouraged more non-violent offenders to be granted time served and/or home confinement to help ameliorate the treacherous environment at FCC Butner.

5

Case 5:18-cr-00191-D   Document 218   Filed 03/19/21   Page 5 of 20

## STATEMENT OF FACTS

On May 16, 2018, Jermill Blacknall along with two co-defendants, was named in a five-count indictment filed in the Eastern District of North Carolina. [D.E. 1]. Counts one (1), three (3), four (4) and five (5) of the indictment applied to Mr. Harper. [D.E. 1]. The government dismissed counts 1 and 4 at sentencing on September 6, 2019. [D.E. 182]. Count 3 charged Mr. Harper with possession with intent to distribute a quantity of heroin in violation of 21 U.S.C. § 841(a)(1). Docket Report at 2. Count 5 charged Mr. Harper with use, carrying, and brandishing a firearm during and in relation to, and possessing a firearm during a crime of violence; aiding and abetting in violation of 18 U.S.C. § 924(c). Docket Report at 2. On June 6, 2019, Mr. Blacknall pled guilty to counts 3 and 5. [D.E. 158]. On September 6, 2019, District Court Judge, The Honorable James C. Dever III, of this Honorable Court, sentenced Mr. Blacknull to twenty-one (21) months imprisonment on count 3 and sixty (60) month on count 5, to run consecutively, coming to a total of eighty-one (81) months of active time, to be followed by three years on count 3 and five years on count 5 of supervised release, to run concurrently. [D.E. 184]. Mr. Blacknall's projected release date is January 28, 2024. https://www.bop.gov/inmateloc/.

The current COVID-19 outbreak has not yet been contained in the United States and certainly and sadly not within our prison walls either. Thus, it is respectfully submitted that this Honorable Court find that Mr. Blacknall has satisfactorily pursued his administrative remedies given that all matters have been completed, as required by 18 U.S.C. § 3582(c)(1)(A). Accordingly, it is respectfully

6

submitted that it is appropriate under these urgent circumstances for this Honorable Court not to strictly construe the administrative exhaustion requirement in the case sub judice and as such, find that Mr. Blacknall has in fact exhausted his administrative remedies. *See Haines v. Kerner*, 404 U.S 519, 520 (1972).

## BACKGROUND

Congress first enacted 18 U.S.C. § 3582(c)(1) as part of the Comprehensive Crime Control Act of 1984 to serve as a "safety valve" for judges to assess whether a sentence reduction was warranted by factors that previously would have been addressed through the abolished parole system. S. Rep. No. 98-225, at 121 (1983). "This legislative history demonstrates that Congress, in passing the Comprehensive Crime Control Act of 1984, intended to give district courts an equitable power to employ on an individualized basis to correct sentences when 'extraordinary and compelling reasons' indicate that the sentence initially imposed on an individual no longer served legislative objectives." *United States v. Millan*, No. 91-CR-685 (LAP), 2020 WL 1674058, at * 5 (S.D.N.Y. Apr. 6, 2020).

The compassionate release statute empowered courts to reduce a defendant's sentence whenever "extraordinary and compelling reasons warrant such a reduction." 18 U.S.C. § 3582(c)(1)(A)(i). Congress delegated to the U.S. Sentencing Commission the responsibility of defining what were "extraordinary and compelling reasons." *See* 28 U.S.C. § 994(t) ("The Commission . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."). It was not until 2007, more than

7

decades after the statute was enacted, that the Commission responded. It issued a guideline stating that "extraordinary and compelling reasons" include medical conditions, age, family circumstances, and "other reasons." U.S.S.G. § 1B1.13, app. n.1(A)-(D).

As discussed above, Mr. Blacknall is unfortunately extremely vulnerable to hospitalization wherein his life as he knows it can very easily be detrimentally impacted forever or, worse, he could potentially be facing death if he does contract COVID-19. *See Current CDC Determinations of High Risk Conditions*: https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last accessed March 19, 2021). Due to the combination of risk factors, proven through statistics and medical reports, Mr. Blacknall's request for compassionate release qualifies under the guidelines as 'extraordinary and compelling' reasons. Application Note 1(A)(ii) to Guidelines Section 1B1.13 states extraordinary and compelling reasons, which include when the defendant is—

(I)   suffering from a serious physical or medical condition;
(II)  suffering from a serious functional or cognitive impairment; or
(III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 app. n. 1(A)(ii). Application Note 1(B) identifies extraordinary and compelling reasons to include Mr. Blacknall's "suffering from a serious physical or medical condition." Furthermore, Application Note 1(D) created a catch-all provision, for when the Director of the BOP determined "there exists in the defendant's case an

8

extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)."

As originally enacted, the statute left sole discretion for filing compassionate release motions with the Director of the BOP, who adopted a program statement governing compassionate release that in many ways narrowed the criteria established by the Commission. *See* BOP Program Statement 5050.49. During the span of more than three decades, the BOP rarely filed motions on behalf of inmates who met the eligibility criteria. The Office of the Inspector General for the Department of Justice concluded in 2013 that "[t]he BOP does not properly manage the compassionate release program, resulting in inmates who may be eligible candidates for release not being considered." Department of Justice, Office of the Inspector General, *The Federal Bureau of Prisons' Compassionate Release Program* (April 2013), at 11, available at https://oig.justice.gov/reports/2013/e1306.pdf; *see also* Department of Justice, Office of the Inspector General, *The Impact of an Aging Inmate Population on the Federal Bureau of Prisons* (May 2015), at 51, available at https://oig.justice.gov/ reports/2015/e1505.pdf ("Although the BOP has revised its compassionate release policy to expand consideration for early release to aging inmates, which could help mitigate the effects of a growing aging inmate population…", decades of denying such Compassionate Release Reduction Requests are imprinted in its long standing history); U.S.S.G. § 1B1.13, app. n.4 (admonishing BOP for its past failure to pursue relief on behalf of eligible inmates). Heeding this criticism, Congress acted.

9

The title of Section 603(b) of the First Step Act—"Increasing the Use and Transparency of Compassionate Release"—leaves no doubt as to Congress' intent in modifying 18 U.S.C. § 3582(c)(1)(A). Through the First Step Act, enacted December 21, 2018, Congress sought to resuscitate compassionate release by, *inter alia*, allowing defendants to directly petition courts for relief, rather than leaving that power solely in the hands of the BOP. *See* 18 U.S.C. § 3582(c)(1)(A). "[U]nder the amended statute, a court may conduct such a review also 'upon motion of the defendant,' if the defendant has exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days has lapsed 'from the receipt of such a request by the warden of the defendant's facility,' whichever is earlier." *United States v. Decator*, No. CCB-95-0202, 2020 WL 1676219 (D. Md. Apr. 6, 2020) (*quoting* 18 U.S.C. § 3582(c)(1)(A)(i); Pub. L. 115-391, Title VI, § 603(b), Dec. 21, 2018, 132 Stat. 5239), *appealed by the government*. In other words, "a prisoner must exhaust the administrative appeal process, or wait 30 days, before his claim may be considered" by the court. *United States v. Underwood*, No. TDC-18-0201, 2020 WL 1820092, at *2 (D. Md. Apr. 10, 2020) (citing cases).

[THIS SPACE IS INTENTIONALLY LEFT BLANK]

**ARGUMENT**

Mr. Blacknall's underlying medical conditions make him especially vulnerable to COVID-19, constituting "extraordinary and compelling reasons" for relief. His release does not pose a danger to the community, and a balancing of the § 3553(a) factors with the risks to Mr. Blacknall posed by COVID-19 warrants relief.

**A. This Honorable Court has the authority to determine that Mr. Blacknall's vulnerability to COVID-19 does in fact constitute an "Extraordinary and Compelling Reason" for a sentence reduction.**

Many federal judges across the country are holding that they have the authority to define "extraordinary and compelling reasons" for release under § 1B1.13 app. n. 1(D) and that the risks associated with COVID-19 can constitute an "extraordinary and compelling reason" for a sentence reduction. *United States v. Brooker (Zullo)*, No. 19-3218, 2020 WL 5739712 (2d Cir. Sept. 25, 2020). Courts have used their wise and appropriate discretion to provide defendants with relief under § 3582(c)(1)(A) "even when their circumstances do not fit squarely within the current policy statement of the Sentencing Commission as reflected in U.S.S.G. §1B1.13." *United States v. Alexander Salabrarria*, Crim. No. 7:00-CR-95-1-BO, ECF No. 125, page 5 (E.D.N.C. April 14, 2020), citing *United States v. Mauma*, No. 2:08-CR-00758-TC-11, 2020 WL 806121, at *4 (D. Utah Feb. 18, 2020) (listing cases holding same).

In *United States v. Mel*, Judge Chuang held that "[a]s applied to Mel, the COVID-19 pandemic presents 'extraordinary and compelling reasons' that warrant the modest sentencing reduction requested." 2020 WL 2041674, at *2. Ms. Mel had submitted documents establishing that she had a thyroid mass that doctors estimated had a 25- to 40-percent chance of malignancy. While Judge Chuang found he could

11

not "conclude with certainty" that Mel had a health condition that placed her at particular risk to severe illness from COVID-19, he "nevertheless . . . f[ound] that the historic COVID-19 pandemic, the fact that Mel has been incarcerated in one of the federal prisons most profoundly impacted by COVID-19 [FCI Danbury], and the fact that as a result of the outbreak, she has effectively been prevented from receiving necessary medical care for a potentially life threatening condition, collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." *Id.* at 3. As discussed herein, *United States v. Mel* presents similar factors with respect to Mr. Blacknall who is currently being incarcerated at FCI Butner II, where there have been numerous COVID-19 related deaths, and about 30% of the inmate population has tested positive for COVID-19. 2020 WL 2041674. Such an environment places Mr. Blacknall at high risk given his medical ailments. Consequently, much like Ms. Mel, Mr. Blacknall presents a series of factors which 'collectively establish 'extraordinary and compelling reasons' within the meaning of 18 U.S.C. § 3852(c)(1)(A)." ' *Id.* at 3.

     Judges in districts throughout the United States have recognized that, at least for certain defendants, COVID-19 presents "extraordinary and compelling reasons" warranting a reduction in their sentences under the compassionate release statute. They vary from individual to individual, which is to be expected, but a common thread attaches them all; that is, the need to otherwise have a fighting chance at surviving alongside their loved ones, as opposed to physically suffering and unnecessarily deteriorating once the coronavirus is contracted by an inmate because of his or her

12

unfortunate medical diseases and concerns or simply due to the fact that COVID-19 is running rampant across our federal prison system leading to unnecessary suffering and death amongst the inmates therein. Some of these cases are cited below to identify the range of which Federal Courts across the country are granting such Compassionate Release Requests. These cases include, but are not limited to:

- *United States v. Howard*, No. 4:15-cr-00018-BR, 2020 WL 2200855 (E.D.N.C. May 6, 2020) (finding 52-year-old with "chronic obstructive pulmonary disease ('COPD'), Type II diabetes, obesity, Stage 3 kidney disease, edema, open wounds on his legs, and a diaphragmatic hernia" demonstrated extraordinary and compelling circumstances due to COVID-19 even though his conditions neither constituted terminal illness nor prevented him from engaging in most of his daily activities without assistance);

- *United States v. Norris*, No. 7:19-cr-36-BO-2, 2020 WL 2110640 (E.D.N.C. Apr. 30, 2020) (finding defendant had demonstrated extraordinary and compelling circumstances for relief because he "suffers from various severe ailments," including a life-threatening disease, kidney failure requiring dialysis three times a week, and recurrent bouts of pneumonia, "that cumulatively make his continued confinement especially dangerous in light of COVID-19.")

- *United States v. Amarrah*, No. 17-20464, 2020 WL 2220008 (E.D. Mich. May 7, 2020) (shortening 60-month sentence after only 21 months because Amarrah's "Type II diabetes, hypertensive heart disease, cardiac arrhythmia, obstructive sleep apnea, and asthma" put him a substantial risk should he contract COVID-19 even though facility had no reported cases);

- *Casey v. United States*, No. 4:18-cr-4, 2020 WL 2297184, at *3 (E.D. Va. May 6, 2020)("The Court finds that Petitioner has set forth extraordinary and compelling reasons to modify his sentence because of the great risk that COVID-19 poses to a person of his age with underlying health conditions.");

- *United States v. Early*, No. 09 CR 282, 2020 WL 2112371, at *2 (N.D. Ill. May 4, 2020) ("the Court cannot discount the risk to Mr. Early if he contracts coronavirus, as reliable information places him in a higher-risk category [62, diabetes and hypertension]. This, in the Court's view, qualifies as an extraordinary reason warranting consideration of a reduction of Mr. Early's sentence.");

13

- *United States v. Soto*, No. 1:18-cr-10086-IT, 2020 WL 2104787 (D. Mass. May 1, 2020) (finding inmate with hypertension at facility with COVID-19 cases located in New York had shown extraordinary and compelling reasons for relief);

- *United States v. Kelly*, No. 3:13-CR-59-CWR-LRA-2, 2020 WL 2104241, at *7 (S.D. Miss. May 1, 2020) (granting compassionate release to young man without health issues at Oakdale I because "it has become increasingly apparent that the BOP has failed to control the outbreak at Oakdale I. … Given the steadily growing death toll and the apparent continued spread of the disease at Oakdale I, COVID-19 creates an 'extraordinary and compelling reason' potentially warranting a reduced sentence.");

- *United States v. Rodriguez*, No. 2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 10, 2020) ("Mr. Rodriguez's circumstances—particularly the outbreak of COVID-19 and his underlying medical conditions that place him at a high risk should he contract the disease—present 'extraordinary and compelling reasons' to reduce his sentence."); and

There is no question that Section 603(b) of the First Step Act fundamentally changed the role of courts in the compassionate release process, vesting them with the authority to determine what constitutes extraordinary and compelling reasons for release. This frightening pandemic, as applied to Mr. Blacknall with his medical conditions and high risk of worsened respiratory complications, or death, if he contracts COVID-19, is an extraordinary and compelling circumstance.

### B. Mr. Blacknall's Dire Situation Presents an "Extraordinary and Compelling" Reason Warranting a Reduction in Sentence.

The Centers for Disease Control have identified several factors that put individuals at higher risk for severe illness. "People of any age with certain underlying medical conditions are at increased risk for severe illness from COVID-19." CDC, *People with Certain Medical Conditions*. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-

medical-conditions.html (last accessed February 19, 2021) (listing obesity as a medical condition that might increase the risk of severe illness from COVID-19); *see also* Institute for Respiratory Health: *COVID-19 and People with Pre-Existing Lung Conditions,* https://www.resphealth.org.au/coronavirus/covid-19-and-people-with-pre-existing-lung-conditions/ (listing obesity as far and away one of the most common illnesses linked to the development of serious disease in COVID-19 patients (last accessed March 16, 2021).

While the Bureau of Prisons has made efforts to reduce the spread of the virus throughout the federal prison system, the rate of infection is far higher within the Bureau of Prisons than within the community at large, and continues to spread at an alarming rate. This is particularly the case at the FCC Butner complex, as discussed in detail earlier. *See* supra at 2-5.

Amid this rapidly-unfolding crisis, the recommended and acceptable antidote is simple: reduce the prison population by releasing those whose continued incarceration is not necessary to protect the public so that correctional institutions can better protect those who need to stay incarcerated.[1] Mr. Blacknall is exactly the type of individual deserving of compassionate release: he is at risk of severe illness

---

[1] For example, on March 27, 2020, more than 400 former DOJ leaders, attorneys, and federal judges sent an open letter to the President, asking that he take immediate action to reduce the population in correctional facilities to prevent the catastrophic spread of COVID-19, in particular by commuting the sentences of elderly and medically vulnerable inmates who have already served a majority of their sentence. *See https://fairandjustprosecution.org/wp-content/uploads/2020/03/Letter-to-Trump-from-DOJ-and-Judges-FINAL.pdf*. The same day, dozens of public health experts made a similar request, asking the President to commute the sentences of elderly inmates, noting they are at the highest risk of dying from the disease and pose the smallest risks to public safety. *See https://thejusticecollaborative.com/wp-content/uploads/2020/03/Public-Health-Expert-Letter-to-Trump.pdf*.

and, as will be discussed in the next section, his release does not pose a danger to the community and balancing the 3553(a) factors warrants the requested relief.

### C. The Relevant § 3553(a) Sentencing Factors Warrant Reducing Mr. Blacknall's Sentence to Time Served / Adding a Period of Home Confinement as a Condition of Supervised Release.

Under the compassionate release statute, when a defendant establishes the existence of extraordinary and compelling circumstances justifying relief, courts must consider the relevant sentencing factors of 18 U.S.C. § 3553(a) to determine whether a sentencing reduction or modification is warranted. 18 U.S.C. § 3582(c)(1)(A)(i). Here, Mr. Blacknall's compromised physical health combined with the Section 3553(a) sentencing factors, warrant immediate relief.

The court shall impose a sentence that is sufficient but "not greater than necessary" to (A) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. § 3553(a)(2)(A)-(D). "[A]lthough defendant's federal sentence may have been appropriate at the time it was imposed, the Court's analysis is different in current circumstances. *United States v. Lee*, 2020 WL 3422772, at \*5 (E.D. Va. June 22, 2020). *United States v. Mel*, 2020 WL 2041674 at \*3 (D. Md. Apr. 28, 2020) (finding release appropriate where "the actual severity of the sentence as a result of the COVID-19 outbreak exceeds what the Court anticipated at the time of sentencing.").

16

Any further detention of Mr. Blacknall during this time would be to continue a sentence that is greater than necessary, particularly when "prisons now are even more dangerous than we typically accept." *United States v. Brown,* No. 4:05-CR-00227-1, 2020 WL 2091802, at *2 (S.D. Iowa Apr. 29, 2020). And again, as discussed earlier, the conditions at the FCC Butner Complex are the worst of all the BOP facilities in the country.

Further deterring any future criminal conduct, Mr. Blacknall has devoted himself to rehabilitation during his time in prison to be aptly prepared to rejoin the workforce upon his release. In one of the character letters submitted on behalf of Mr. Blacknall, Mr. Don Green emphasized Mr. Blacknall's exceptional performance during his GED studies. Mr Green noted that in six (6) years of tutoring inmates, he had only seen roughly twenty (20) inmates receive their GED. Not only did Mr. Blacknall obtain his GED, but he scored at a college level in some subjects on the examination. Mr. Green also spoke confidently of Mr. Blacknall's growth and transformation during his time in prison, drawing particular attention to Mr. Blacknall's participation in bible study groups, willingness to volunteer and become a GED tutor himself after passing the exam, and eventual baptism in April of 2019. *See* **Exhibit D** (Character Letters: Letter from Mr. Green). Beyond obtaining his GED, Mr. Blacknall has also received his certificate for completing all material required for the "Employment and Career Ready" course at FCI Butner II. **Exhibit E** Certificate of Completion for Employment and Career Ready.

Mr. Blacknall is also a loving father to six children who wants the opportunity to reconnect with them during this harrowing time. Time with Mr. Blacknall's children is particularly precious ever since the murder of his 14 year old son in 2018. Because of this incident, Mr. Blacknall fell into a deep depression and was on anti-depressants from late 2019 until late 2020. *See* **Exhibit A** (Medical Records) at 10, and 16, 85 (began anti-depressants in late 2019 and came off in late 2020). Mr. Blacknall has a great support system in place and a number of friends who believe in him and his capacity to learn from his mistakes and live a better life. *See* **Exhibit D** (Character Letters).

A reduction or modification of Mr. Blacknall's sentence would not diminish the seriousness of the offense, nor would it place the public in any danger. The extraordinary and compelling circumstances presented by the uncontrolled spread of COVID-19—compounded by the heightened risks faced by Mr. Blacknall while located in one of the deadliest BOP facility during this pandemic, warrant relief. Mr. Blacknall's period of supervised release awaiting him will ensure that he complies with the law upon release. *See United States v. Early*, 2020 WL 2112371, at *5 (N.D. Ill. May 4, 2020) (finding that the risk to the public "does not outweigh the risk to [Early] from contracting the coronavirus while incarcerated," particularly where "the Probation Office and the Court will be monitoring him while on supervised release and []the Court will not hesitate to recommit him to prison should he again go astray.") The Court may also impose home confinement for a term equivalent to the remainder of his custodial sentence as well. 18 U.S.C § 3582(C)(1)(A). *See also United*

*States v. Raia*, No. 2:18-CR-657, Dkt. No. 91 (D.N.J., May 7, 2020). Considering all of the emergency circumstances in this case, this Court should find that a combination of supervised release and/or home confinement is sufficient to ensure deterrence, protection of the public, and would allow Mr. Blacknall to seek alternative medical care in a place that is sanitary and conducive to the protection of his heightened risk factors for experiencing serious or deadly complications from contracting COVID-19.

## CONCLUSION

It is respectfully submitted that Mr. Blacknall has demonstrated extraordinary and compelling reasons for compassionate release and thus, respectfully requests this Honorable Court to reduce his sentence to time served and/or add a period of home confinement as a condition of supervised release.

Respectfully submitted, this the 19th day of March 2021.

GUIRGUIS LAW, PA

<u>/s/ Nardine Mary Guirguis</u>
Nardine Mary Guirguis
434 Fayetteville St., Suite 2140
Raleigh, North Carolina 27601
Telephone: (919) 832-0500
Facsimile: (919) 246-9500
nardine@guirguislaw.com

*Designation: CJA Appointed*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served upon the Assistant Attorney for the United States electronically at the following address:

Robert J. Dodson
United States Attorney's Office - EDNC
150 Fayetteville St.
Suite 2100
Raleigh, NC 27601
Robert.dodson@usdoj.gov

This 19th day of March 2021.

GUIRGUIS LAW, PA

/s/ Nardine Mary Guirguis
Nardine Mary Guirguis
PANEL Attorney